# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| v. | * |
| **UMAR BURLEY** | * |
| and | |
| **BRENT MATTHEWS,** | * |
| **Defendants** | * |

Criminal No.: RDB-11-0074

...oOo...

## GOVERNMENT'S SUPPLEMENTAL OPPOSITION TO DEFENDANTS' MOTION TO SUPPRESS EVIDENCE

The United States of America, by and through its attorneys, Rod J. Rosenstein, United States Attorney for the District of Maryland, and Christine Celeste, Special Assistant United States Attorney for said District, and John Purcell, Assistant United States Attorney for said District, submits this Supplemental Opposition to Defendant's Motions to Suppress.

## II. STATEMENT OF FACTS

On April 28, 2010 at about 11:45 a.m., Detectives Wayne Jenkins, Ryan Guinn, and Sean Suiter were working in plain clothes and operating unmarked vehicles in the area of the Seton Apartments, located in the 3800 block of Parkview Avenue in Baltimore, Maryland. The officers had received information from other officers and from informants indicating that the area was regularly used as a meet location to distribute narcotics. Specifically, Detective Jenkins had spoken with an informant who stated that large scale drug dealers use the area of the 3800 block of Parkview Avenue to conduct transactions because of the low amount of crime in the neighborhood and the lack of police presence. This information was received within a month of the stop of Burley and Matthews. Detective Jenkins had also received information from other officers, including Detective Gladstone, who indicated that they had made large scale seizures of drugs in the area. Detective Jenkins himself had arrested between five and ten defendants in the area and had seized

distribution quantities of drugs. While traveling in the 3800 block of Parkview Avenue, Detective Jenkins observed a black Acura stopped on the side of the street. Brent Matthews was observed jogging toward the passenger's side of the vehicle holding currency in his left hand. As he approached the Acura, Matthews was looking around, as if to search for police presence. Matthews entered the passenger's side of the Acura. The officers believed that a drug transactions was about to take place based on their experience in seizing drugs from individuals making deals in cars and information provided by informants, who stated that they would meet with their buyers make quick exchanges of drugs for money inside of vehicles where they were less exposed to the public and any police who may be watching the area. Detective Jenkins pulled the vehicle that he was driving, and in which Detective Guinn was the passenger, diagonally in front of the Acura. Detective Suiter pulled his vehicle behind the Acura. Both police vehicles displayed emergency lights. The Acura was not blocked in and was never bumped by either police vehicle. The Detectives exited their vehicles with their badges clearly displayed. Detective Jenkins observed continual movement in the Acura. The driver and registered owner of the Acura was later identified Umar Burley. Detective Jenkins identified himself as a police officer and directed the defendants to show him their hands. The Defendants did not comply with the directives but instead, Burley began maneuvering the vehicle backward and forward attempting to get away from the police. Detective Guinn removed his weapon and ordered Burley to stop the Acura. Burley did not stop the vehicle but instead continued to maneuver the vehicle until he was able to get out from between the police vehicles without striking either vehicle. Burley fled on Parkview Avenue and turned right onto Belle Avenue.

The detectives pursued the Acura. The Detectives lost sight of the Acura at various points during the pursuit because they were obeying traffic signals, whereas Burley was not. As the Detectives proceeded in the direction that the Acura was traveling, they arrived at the intersection of Belle Avenue and Gwynn Oak Avenue, at which time they observed the Acura resting against a fire hydrant and smoking from heavy front-end damage. See Exhibit 1 (post-crash photo of Acura). Detectives observed Burley and Matthews exit the Acura and flee on foot. Both were apprehended a short distance from the crash. Upon apprehending the Defendants, detectives learned that the Acura had been involved in a collision with a Chevy Monte Carlo. The collision forced the Monte Carole into the porch of a nearby house, killing the 87 year-old driver of the Monte Carlo, Albert Davis, and severely injuring his 82 year-old wife, Phosa Cain. See Exhibit 2 (post-crash photo of the Monte Carlo). Detective Suiter conducted a search of the Acura which resulted in the recovery of 32 clear plastic bags containing 28.62 grams of heroin. A digital scale was also recovered from the passenger floor board of the vehicle.

## III. ARGUMENT

1. **Assuming *Arguendo* that Defendants Had Standing to Challenge a Search of the Acura, the Heroin Recovered is Admissible Because It Would Inevitably Have been Discovered.**

   A. **The Heroin and Digital Scale would have been discovered during an inventory search of the vehicle.**

   Defendants' challenge to the search of the Acura fails because the 28 grams of heroin and digital scale inevitably would have been discovered pursuant to an inventory search when the Acura was towed. Under the inevitable discovery doctrine, evidence may be admitted, even if it was improperly seized, if "the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Nix .v Williams*, 467 U.S. 431, 444 (1984). This case meets that test: If Detective Suiter had not

searched the Acura, the heroin and digital scale found on the passenger floor board would in any event have been discovered pursuant to an inventory search of the Acura, which was so badly damaged that it had to be towed from the scene of the accident.

The inevitable discovery doctrine has been combined with the inventory search exception to admit unlawfully obtained evidence if the contested evidence "would nonetheless have been discovered in the course of a valid inventory search. See, e.g., *United States v. Lynn*, 592 F.3d 572 (4th Cir. 2010)(strong odor of marijuana from car and chemical odor emanating from trunk gave probable cause to arrest the defendants which would have resulted in inventory of vehicle); *United States v. Mendez*, 315 F.3d 132, 137 (2nd Cir. 2002) (holding that, even if officers' initial search of defendant's car at time of defendant's arrest was not a valid inventory search for purposes of the inventory search exception to the warrant requirement, handgun recovered from car is admissible because it would have been inevitably discovered during a valid inventory search).

The appropriate question when assessing inevitable discovery by means of an inventory search is whether an inventory search would have occurred and whether the evidence would have been discovered pursuant to that search. *See, e.g, United States v. George*, 971 F.2d 1133, 1121-22 (4th Cir. 1992) (inevitable discovery would permit evidence seized from vehicle as long as police would have found evidence during subsequent inventory search).

An inventory search of an automobile is an exception to the warrant requirement. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). It is well-settled that a vehicle search is proper when it is pursuant to a vehicle inventory, and neither a warrant nor probable cause is required for a proper inventory search. *South Dakota v. Opperman*, 428 U.S. 364, 374-76 (1976). For an inventory search of a vehicle to be valid: (1) the vehicle must be in lawful custody of the police; (2) the inventory search must be routine and conducted pursuant to standard police procedures;

4

and (3) the purpose of the inventory search must be to secure the car or its contents and not to gather incriminating evidence. *United States v. Brown*, 787 F.2d 929, 931-32 (4th Cir.1986). An on-site inventory search, as opposed to one that is conducted at an impound lot, is permissible so long as the officer had the initial authority to impound the vehicle. *United States v. Williams*, 936 F.2d 1243, 1248-49 (11th Cir.1991).

Vehicle inventory searches must be conducted according to standard operating procedure. *See Florida v. Wells*, 495 U.S. 1, 4-5 (1990). Baltimore Police Department General Order I-2, covering *Procedures Governing the Use of Pushing/Towing Vehicles* (Exhibit 1), provides policy regarding inventorying vehicles to be towed. When a vehicle is to be towed to the City Yard after the operator's arrest, officers follow the procedures for towing disabled vehicles, which call for an inventory of personal and detachable property is to be performed (Exhibit 1 at p.2, 4). This general order required an officer on the scene to conduct an inventory of the Acura's contents before the Acura was removed to the City Yard. It was standard procedure to tow a vehicle in a situation such as this case (Exhibit 1 a p.2, 4). The Acura was had crashed into an damaged a fire hydrant and was not able to be driven following the collision. (See Exhibit 2).

"A proper inventory search is merely an incidental administrative step following arrest and preceding incarceration conducted to protect the arrested from theft of his possessions, the police from false accusations of theft, and to remove dangerous items from the arrested prior to his jailing." *United States v. Banks*, 482 F.3d 733, 739 (4th Cir. 2007), citing *Illinois v. Lafayette*, 462 U.S. 640, 644-46 (1983). By conducting the inventory according to Police Department policies, officers were following "standardized caretaking procedures" when arranging for the towing of the vehicle and inventorying its contents. *Colorado v. Bertine*, 479 U.S. 367, 368 (1987).

Accordingly can be no dispute that the officers would have lawfully recovered the 28 grams of heroin and the digital scale if they had not previously seized those items. *Accord United States v. George*, 971 F.2d 1113, 1121 (4th Cir. 1992) (reversing suppression of hack saw blades found in tool box in trunk of car and remanding for finding whether blades would have been found in subsequent vehicle inventory search).

**B. The Heroin Was In Plain View.**

The heroin seized from Burley's Acura was in plain view on the passenger's side floorboard; therefore, officers could lawfully seize it. (See Exhibit 3, 4) The plain view doctrine permits officers to seize incriminating evidence "when (1) the officer is lawfully in a place from which the evidence may be plainly viewed; (2) the officer has a lawful right of access to the object itself; and (3) the object's incriminating character is immediately apparent." *United States v. Jackson*, 131 F.3d 105, 1009 (4th Cir. 1997). Here, the officers the officers could view the heroin on the Acrua's floorboard from the public street where the Acura was found crashed into a fire hydrant. The officers had a lawful right of access to the vehicle because the *Carroll* doctrine permits the search of a vehicle that officers have probable cause to believe contains contraband or evidence of a crime. Here, the Acura was a crime scene. It had been involved in a fatal collision and had been abandoned by its occupants, therefore, a search for evidence relating to the occupants, who fled the scene of an accident involving bodily injury and death was permissible. Further, immediately upon seeing the heroin, the officers were aware of its incriminating character. Therefore, the heroin could be seized under the plain view exception to the warrant requirement. *See e.g. United States v. Rumley*, 588 F.3d 202, 205-06 (4th Cir. 2009)(upholding plain view seizure of gun from vehicle); *United States v. Davis*, 2011 WL 1691832 (4th Cir. 2011)(unpublished)(same); *United States v. Hall*, 397 Fed.Appx. 860 (4th Cir. 2009)(unpublished)(upholding seizure of marijuana from vehicle under plain view exception to

warrant requirement; finding that handgun not in plain view was lawfully seized under *Carroll* doctrine because presence of marijuana justified further search of the car).

**2.  Because Burley Could be Arrested for Leaving the Scene of an Accident Involving Bodily Injury, Under the Carroll Doctrine, Officers had Probable Cause to Search the Acura for Evidence of that Crime.**

> A.  <u>Defendant Burley's Arrest was Supported by Probable Cause</u>

At the time that Burley was arrested, officers had probable cause to believe that he had violated the Maryland Transportation Code by failing to remain at the scene of an accident involving bodily injury or death.  *See* Maryland Transportation Article, § 20-102.[1]  In determining whether probable cause existed for the defendant's arrest, this court must look to the totality of the circumstances.  *See Illinois v. Gates*, 462 U.S. 213, 230-32 (1983); *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996).  Probable cause for a warrantless arrest has been defined by the Fourth Circuit as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998) (citations omitted); *Wong Sun v. United States*, 371 U.S. 471, 479 (1963) (noting that the probable cause analysis is fact-specific).  "Additionally, officers are permitted to draw on their experience and specialized training to make inferences from and deductions about cumulative evidence."  *United States v. Arvizu*, 534 U.S. at 273.

---

[1] Maryland Transportation Article § 20-102 provides (in pertinent part):
(a)   The driver of each vehicle involved in an accident that results in bodily injury to or death of another person immediately shall stop the vehicle as close as possible to the scene of the accident, without obstructing traffic more than necessary.

Section 26-202 of the Maryland Transportation Article gives a police officer the power to arrest a person without a warrant if the officer has probable cause to believe that the person has committed a violation of Sections 20-102 and 20-104.  *See* § 26-202(a)(3)(iii).

Here, there was ample probable cause for Burley's arrest. First, officers believed that Burley was involved in a drug transaction based on the following facts: (1) information received by the officers that high level drug deals took place in the area of 3800 Parkview Avenue; (2) information received by the officers and information known to them that drug deals frequently occur in vehicles, out of the plain view of the police; (3) observation of Matthews jogging up to Burley's vehicle looking around as if attempting to determine whether police were present; (4) the experience of the officers that such transactions routinely result in the seizure of narcotics; (5) when the officers attempted to stop the Acura, Burley fled; (6) during his flight, Burley ignored traffic signals traveled at a high rate of speed through a residential area; and (7) Burley struck a Monte Carlo, causing sever injury to both occupants and did not remain at the scene of the accident to render aid or provide his information as required by Maryland Transportation Code, §§ 20-102 and 20-104.² Further upon checking Burley's information, officers learned that his license had been suspended. (See Exhibit 5). It is a violation of Maryland law to drive a

---

² Maryland Transportation Article § 20-104 provides (in pertinent part):
    (a)    *Rendering Assistance*. — The driver of each vehicle involved in an accident that results in bodily injury or death of any person or in damage to an attended vehicle or other attended property shall render reasonable assistance to any person injured in the accident, and if the person requests medical treatment or it is apparent that medical treatment is necessary, arrange for the transportation of the person to a physician, surgeon, or hospital for medical treatment.
    (b)    *Duty to give certain information*. — The driver of each vehicle involved in an accident that results in bodily injury to or death of any person or in damage to an attended vehicle or other attended property shall give his name, his address, and the registration number of the vehicle he is driving and, on request, exhibit his license to drive, if it is available, to:
        (1)    Any person injured in the accident; and
        (2)    The driver, occupant of, or person attending any vehicle or other property damaged in the accident.
    (c)    *Exhibiting license*. — The driver of each vehicle involved in an accident that results in bodily injury or death of any person or in damage to an attended vehicle or other attended property shall give the same information described in subsection (b) of this section and, on request, exhibit his license to drive, if it is available, to any police officer who is at the scene of or otherwise is investigating the accident.

motor vehicle while the driver's license or privilege to drive is suspended or revoked. Accordingly, the officers also had sufficient probable cause to arrest Burley for drug distribution, leaving the scene of an accident involving bodily injury, and driving on a revoked license.

B. The Subsequent Search of the Vehicle was Lawful

A long standing exception to the search warrant requirement is a search that occurs incident to a lawful arrest. *See Chimel v. California*, 395 U.S. 752, 763 (1969) (holding that a lawful custodial arrest justifies the contemporaneous search without a warrant of the arrestee and of the immediate surrounding area). In *New York v. Belton*, 453 U.S. 454, 460 (1981), the Supreme Court considered *Chimel's* application to the automobile context and held that where, as here, an officer lawfully arrests the occupant of an automobile "he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id*. at 460. For years, it has been widely-accepted that *Belton* embraced a bright-line rule that authorized a vehicle search incident to any recent occupant's lawful arrest.

On April 21, 2009, however, the Supreme Court rejected that view in *Arizona v. Gant*, holding that authorities may search a vehicle incident to a recent occupant's arrest only when it is reasonable to believe that either: (1) the arrestee might access the interior of the vehicle at the time of the search, or (2) evidence relevant to the crime of arrest might be found in the vehicle. *Arizona v. Gant*, 556 U.S. ____, 129 S.Ct. 1710, 1719 (2009). The Court's expressed intention was to "retether" the scope of automobile searches incident to arrest to the justifications underlying their decision in *Chimel*, which the Court stressed "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Id*. at 1716. In the case of suspects who have been detained and no longer have access to the passenger compartment of a vehicle, *Gant* limited the search of a vehicle incident to arrest to situations where evidence of the offense of arrest was likely to be located. *Id.* at 1719.

9

In Burley's case, evidence of the offense of arrest was likely to be located. One of several violations that Burley was arrested for was leaving the scene of an accident involving bodily injury. A search of the Acura would produce the Acura's registration and would assist the officers in properly identifying Burley as the driver of the Acura at the time of the crash.

Independent of the search incident to a lawful arrest, the officers were authorized to search the car under the automobile exception to the warrant requirement. Under this exception, law enforcement officers are permitted to search a car if it is readily mobile and probable cause exists to believe that the car contains contraband or evidence of a crime. *See, e.g., Maryland v. Dyson*, 527 U.S. 465, 466 (1999); *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996); *United States v. Collins*, 412 F.3d 515, 518 (4th Cir. 2005). This exception to the warrant requirement applies with equal force regardless of whether the vehicle is in danger of being imminently driven away. *See United States v. Gastiaburo*, 16 F.3d 582 (4th Cir. 1994) (warrantless search of immobilized car was permissible where authorities had probable cause to believe it contained contraband); *California v. Carney*, 471 U.S. 386, 391 (1985) ("Even in cases where an automobile is not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception.").

To determine whether officers have probable cause to conduct a search, courts rely on the totality of circumstances test established in *Illinois v. Gates. United States v. White*, 549 F.3d 946, 949 (4th Cir. 2008). As stated above, the officers had ample probable cause for Burley's arrest based on informant and officer information regarding drug sales in the area of 3800 Parkview Avenue, officers' observations of activity consistent with drug sales, Burley's flight, Burley leaving the scene of an accident involving bodily injury and failing to render assistance to

the injured persons, and Burley having a revoked driver's license. *See, e.g., U.S. v. Davis*, No. 05-4547, 2006 WL 1114035, at **3 (4th Cir. April 27, 2006) (finding probable cause to believe vehicle transporting contraband when approaching officer observed defendant reach toward glove compartment, defendant's eyes were glassy, and defendant admitted to smoking narcotics) (attached); *U.S. v. Reyes*, No. 97-4161, 1998 WL 391522, at 2 (4th Cir. June 30, 1998) (noting officer's observation of defendant "acting very nervous" as factor in probable cause determination). Therefore, the officers subsequent search of Burley's Acura vehicle was lawful.

### III. CONCLUSION

For the foregoing reasons, and those advanced in the Government's Consolidated Response to Defendants' Motions to Suppress the government respectfully requests that the Court deny the defendant's motion to suppress evidence in all respects.

Date:	6/6/11	By: _____/s/_____
				Christine Celeste
				Special Assistant United States Attorney
				36 S. Charles Street, Fourth Floor
				Baltimore, Maryland 21201
				(410) 209-4800

Served on defense counsel via electronic filing.